**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Michael RUSH, Appellant.**

Superior Court of Pennsylvania.

Submitted June 26, 2006.

Filed Sept. 19, 2006.

Reargument Denied Nov. 20, 2006.

Robert E. Mielnicki, Pittsburgh, for appellant.

Kyle M. Baxter and John W. Peck, II, Asst. Dist. Atty's, Greensburg, for Com., appellee.

BEFORE: TODD, BENDER and GANTMAN, JJ.

OPINION BY BENDER, J.:

¶ 1 Michael Rush, Appellant, appeals from a judgment of sentence ordering him, *inter alia,* to pay $28,450 in restitution pursuant to a negotiated plea he entered on November 16, 2005. The record reveals ample evidence that Appellant agreed to joint and several liability with his co-defendant for this amount of restitution prior to pleading guilty, which he did voluntarily, knowingly, and intelligently. Accordingly, we affirm.

¶ 2 A factual and procedural history follows. Appellant and his codefendant, Christine Keener, were charged with Theft by Unlawful Taking (18 Pa.C.S.A. § 3921(a)), Theft by Deception (18 Pa.C.S. § 3922(a)(1)), Receiving Stolen Property (18 Pa.C.S. § 3925(a)), and Criminal Conspiracy (18 Pa.C.S. § 903(a)(1)), for stealing twenty-two (22) aluminum plates from Siko's Scrap Yard and selling some of them to Daniels & Miller, Inc.

¶ 3 On October 27, 2005, the trial court conducted a restitution hearing in co-defendant Keener's case and, based upon the victim's testimony, determined that the victim had $28,450 in losses outstanding from the theft. N.T. Guilty Plea Proceedings, 11/16/05, at 5.

¶ 4 On November 16, 2005, Appellant pled guilty to the above-noted offenses. At the guilty plea hearing, Appellant appeared before the Honorable Richard E. McCormick, Jr., who had also conducted Keener's restitution hearing. Prior to conducting the oral plea colloquy, Judge McCormick indicated that he would not hold an additional evidentiary hearing for Appellant for the purpose of determining the amount of restitution because he had already determined the victim's losses at Keener's hearing. *Id.* at 3–4. Judge McCormick clearly communicated his intention to impose restitution in the amount of $28,450, jointly and severally with co-defendant Keener, upon acceptance of Appellant's guilty plea. *Id.* at 5–6. Additionally, Appellant entered into a written plea agreement, wherein Appellant acknowledged that a restitution hearing had been held in co-defendant Keener's case and that restitution had been set by Judge McCormick at that time. Guilty Plea Petition, 11/16/05, at 3.

¶ 5 Despite Appellant's knowledge that his negotiated plea would result in a sentence of restitution in the amount of $28,450, Appellant proceeded to enter his guilty plea pursuant to a complete written and oral colloquy. Not surprisingly, after accepting Appellant's negotiated guilty plea, Judge McCormick ordered him to pay the restitution jointly and severally with codefendant Keener in the amount of $28,450. N.T. Guilty Plea Proceedings at 11. Additionally, Judge McCormick imposed a sentence of two years' intermediate punishment with six months' home electronic monitoring and granted credit for time served. *Id.*

¶ 6 On December 15, 2005, Appellant filed a notice of appeal from his judgment of sentence. The court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed his statement, in which he challenged the amount of restitution, on January 3, 2006. Judge McCormick filed an opinion, pursuant to Pa. R.A.P. 1925(a), on January 10, 2006.

¶ 7 Appellant presents the following issues in this appeal:

I. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT A HEARING BEFORE SENTENCING HIM TO PAY RESTITUTION IN THE AMOUNT OF $28,450.00?

II. WHETHER THE TRIAL COURT ERRED IN ORDERING APPELLANT TO PAY RESTITUTION IN THE AMOUNT OF $28,450.00, WHERE SUCH AN ORDER WAS NOT SUPPORTED BY THE RECORD?

Appellant's brief at 4.

¶ 8 When reviewing the trial court's decision regarding an order of restitution, this Court applies an abuse of discretion standard. *Commonwealth v. Ortiz,* 854 A.2d 1280, 1282 n. 1 (Pa.Super.2004). Further, we note that Appellant, "upon entering a guilty plea[,] waive[d] his right to challenge on appeal all non-jurisdictional defects except the legality of his sentence and the validity of his plea." *Commonwealth v. Passmore,* 857 A.2d 697, 708–09 (Pa.Super.2004).

¶ 9 Underlying Appellant's claims are arguments challenging the validity of his plea, particularly the voluntariness of his plea. In his first issue, Appellant relies on *Commonwealth v. Opara,* 240

Pa.Super. 511, 362 A.2d 305, 310 (1976), to argue that due process required the trial court to grant him a hearing prior to sentencing so that he could challenge the victim's claim for restitution. He states that "[d]ue process requires that before an order of restitution is made, the defendant must receive notice that the trial court may raise the matter, he must be given a hearing, and he must be permitted to present evidence in his favor to an impartial tribunal." Appellant's Brief at 7. However, Appellant's reliance on *Opara* is misplaced. Not only did *Opara* deal with reimbursement to the public defender's office for representation of a purportedly indigent defendant, but the due process argument raised therein was premised on the constitutional right to counsel. *Opara*, 362 A.2d at 310.

¶ 10 More importantly, *Opara* did not involve a negotiated plea arrangement whereby the defendant was made fully aware, prior to entering the plea, that the court would impose a specific amount of restitution upon acceptance of the plea, and whereby the defendant agreed to accept restitution set in a co-defendant's case for the same crimes. Appellant's circumstances are drastically different from those in *Opara* and, therefore, Appellant fails to persuade this Court that his due process rights were violated for the failure to repeat the same evidentiary hearing, which he had agreed to forego as part of his plea.

¶ 11 Additionally, in conjunction with his first issue, Appellant asserts that, under the circumstances at the guilty plea hearing, he had "no other choice but to accept ... joint and several liability for the $28,450.00 in restitution." Appellant's Brief at 8. Thus, it appears that Appellant is specifically challenging the voluntariness, and thus the validity, of his plea.

¶ 12 "Our law is clear that, to be valid, a guilty plea must be knowingly, voluntarily and intelligently entered." *Commonwealth v. Pollard*, 832 A.2d 517, 522 (Pa.Super.2003). In *Commonwealth v. Fluharty*, 429 Pa.Super. 213, 632 A.2d 312 (1993), we set forth guidelines to determine the validity of a guilty plea:

> In order for a guilty plea to be constitutionally valid, the guilty plea colloquy must affirmatively show that the defendant understood what the plea connoted and its consequences. This determination is to be made by examining the totality of the circumstances surrounding the entry of the plea. [A] plea of guilty will not be deemed invalid if the circumstances surrounding the entry of the plea disclose that the defendant had a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea.

*Id.* at 314 (quotation marks and citations omitted). "Our law presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden of proving otherwise." *Pollard*, 832 A.2d at 523 (citations omitted). "[W]here the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established." *Commonwealth v. McCauley*, 797 A.2d 920, 922 (Pa.Super.2001). Thus,

> [a] court accepting a defendant's guilty plea is required to conduct an on-the-record inquiry during the plea colloquy. The colloquy must inquire into the following areas:
>
> (1) Does the defendant understand the nature of the charges to which he or she is pleading guilty or *nolo contendere?*
>
> (2) Is there a factual basis for the plea?

(3) Does the defendant understand that he or she has the right to trial by jury?

(4) Does the defendant understand that he or she is presumed innocent until found guilty?

(5) Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?

(6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

*Pollard,* 832 A.2d at 522–23 (citations omitted).

¶ 13 The record belies Appellant's assertion that his plea was entered involuntarily. First, Appellant signed a written plea agreement, which indicated that Appellant agreed to the amount of restitution set at codefendant Keener's hearing. Guilty Plea Petition at 3 (stating that Appellant would defer to "restitution [hearing] held on [co-defendant's] case before [Judge McCormick] and [that restitution was] set at that time").

¶ 14 Second, Judge McCormick clearly notified Appellant in open court of his intention, upon acceptance of the plea, to impose the restitution in the amount of $28,450, jointly and severally with co-defendant Keener. For example:

> THE COURT: ... [I] ordered the restitution that was being sought in [Keener's] case, and so, [Appellant] should understand that that's what I'm going to do here too. I'm going to be consistent with the—we had an evidentiary hearing already on that. I'm not going to repeat that.
>
> [Appellant's attorney]: Okay.
>
> THE COURT: So he would have joint and several liability for $28,450.00.
>
> . . .
>
> THE COURT: As far as I'm concerned it's res judicata on the evidentiary hearing. We had this evidentiary hearing for his co-Defendant. The victim, a representative of the victim came in and testified as to the value of the items, and I accepted that, and I'm not going to hold another hearing for [Appellant]. That's just not necessary. So if he's willing to accept his joint and several liability for the amount of restitution with Ms. Keener [sic].
>
> [Appellant's attorney]: I've discussed that with him, Your Honor. He understands the concept of joint and several liability and is willing to agree to that.

N.T. Guilty Plea Proceedings at 3–6. Thereafter, the Commonwealth recited its recommended sentence, including the restitution described herein. *Id.* at 6.

¶ 15 Judge McCormick then conducted a thorough oral plea colloquy wherein Appellant acknowledged that: (1) he read and understood the English language; (2) he has not been treated for mental illness; (3) he was not under the influence of drugs or alcohol; (4) his attorney went through and explained the written colloquy, discussed the facts of the case, the charges, the maximum sentences, and his rights as a defendant; (5) he was not on probation or parole when he committed the present offenses; (6) no threats or promises were made to get him to plead guilty; (7) his sentence and appeal rights were explained; and (8) he signed the written plea colloquy and understood its contents. *Id.* at 7–9.

¶ 16 Additionally, in the written plea colloquy, Appellant acknowledged, *inter alia,* that he: (1) understood the nature of the charges to which he was pleading guilty (Guilty Plea Petition at ¶ 3); (2) understood the factual bases for the plea (*Id.;* ) (3) understood his right to trial by jury (*Id.* at ¶ 4(b)); (4) understood that he was presumed innocent until proven guilty (*Id.* at ¶ 4(a)); (5) was aware of the permissible range of sentences and/or fines

for the offense charged (*Id.* at ¶ 7); and (6) understood that the judge was not bound by the terms of the plea agreement (*Id.* at ¶ 8).

¶ 17 We emphasize that the law does not require that Appellant be completely satisfied with the outcome of his decision to plead guilty. *Pollard,* 832 A.2d at 524. The law only requires that a plea be voluntary, knowing, and intelligent. *Id.* Thus, this Court, in examining the totality of circumstances surrounding the entry of the plea, is satisfied that the Appellant "had a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea" which encompassed an agreement to pay $28,450 in restitution. *See Fluharty,* 632 A.2d at 313. Further, we hold that the trial court did not err by refusing to hold an evidentiary hearing, as the amount in restitution was already established and agreed-upon as stipulated in the written plea petition as well as on the record orally at the plea hearing.

¶ 18 In his second issue, Appellant claims that the amount of restitution ordered by the trial court was not supported by the record. Again, we disagree.

¶ 19 Title 18 Pa.C.S. § 1106 ("Restitution for injuries to person or property") contains the following provision:

**(c) Mandatory restitution.—**

(1) The court shall order full restitution:

(i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss.

. . .

(2) At the time of sentencing the court shall specify the amount and method of restitution. In determining the amount and method of restitution, the court:

(i) Shall consider the extent of injury suffered by the victim, the victim's request for restitution ... and such other matters as it deems appropriate.

18 Pa.C.S. § 1106(c)(1)(i), (c)(2)(i). In *Commonwealth v. Pappas,* 845 A.2d 829, 842 (Pa.Super.2004), we stated that the amount of restitution imposed should be supported by the record and may not be speculative or excessive.

¶ 20 As described above, the trial judge in this case also presided over the evidentiary hearing held in regard to restitution owed by co-defendant Keener who was an accomplice to the instant crimes. N.T. Guilty Plea Proceedings at 3–4. Prior to entry of the guilty plea, the trial court judge clearly explained that the victim's testimony, as to the value of the stolen property, supported restitution in the amount at issue. *Id.* at 5. In accepting the victim's testimony as credible, the court determined, and Appellant confirmed, that the loss suffered by the victim was attributable to conduct on the part of Appellant and co-defendant Keener. *Id.* at 3, 10.

¶ 21 We again emphasize that Appellant was fully aware, as part of his negotiated plea, that the court would impose joint and several liability for $28,450 restitution upon sentencing after entry of the plea. *Id.* at 4, 6. Nevertheless, Appellant proceeded to enter a voluntary, knowing, and intelligent plea. We hold that the amount of restitution ordered by the trial court was supported by the record and was neither speculative nor excessive.

¶ 22 We also note that Appellant's reliance on *Commonwealth v. Reed,* 374 Pa.Super. 510, 543 A.2d 587 (1988), for the proposition that the trial court erred in not properly making several pre-sentence considerations before imposing restitution, is misplaced. In *Reed,* the defendant unlawfully received some property stolen in a

burglary but was ordered to pay restitution, as part of his sentence, in an amount equivalent to the value of all the property taken by the burglar. *Id.* at 588. In determining the amount of restitution the defendant should be ordered to pay, the trial court must consider three factors: "the loss or damage directly caused by the defendant's criminal act, the amount of restitution [defendant] can afford to pay, and the method by which [defendant] should pay it." *Id.* at 589.

¶ 23 The circumstances in *Reed* are distinguishable from those in the instant case. First, *Reed* did not involve a negotiated guilty plea. Second, the principle enunciated in *Reed* that, prior to ordering restitution, the court must consider defendant's ability to pay, is now called into question given the 1995 re-writing of section 1106(c). At the time Appellant committed the instant crimes (and in its current form), 18 Pa.C.S. § 1106(c) indicated that "[t]he court shall order full restitution regardless of the current financial resources of the defendant." We took note of this in *Commonwealth v. Colon*, 708 A.2d 1279 (Pa.Super.1998), stating that the court need not consider the defendant's ability to pay at the time of imposing restitution, and the defendant's ability to pay need only be considered upon default. *Id.* at 1282–83.

¶ 24 Appellant also off-handedly suggests that if Appellant cannot make payments, the court may sentence him to a term of imprisonment: "The trial court states that should Appellant be unable to pay, that matter can be addressed, apparently under threat of imprisonment, at a future hearing." Appellant's Brief at 12. However, an offender's inability to pay does not subject him or her to imprisonment. *See* 18 Pa.C.S. § 1106(c)(2)(iii) (indicating that "the court ... [s]hall not order incarceration of a defendant for failure to pay restitution if the failure results from the offender's inability to pay."). We note that Appellant may petition to modify restitution for inability to pay but that he has not thus far presented the trial court with any evidence to support modification. *See Commonwealth v. Parella*, 834 A.2d 1253, 1256 (Pa.Cmwlth.2003).

¶ 25 Judgment of sentence affirmed.